# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| YAMARI J. MENDRELL,                              ) | |
|                                                            ) | |
|             Plaintiff,                                   ) | |
|                                                            ) | |
|                         v.                               )     **CIVIL ACTION** |
|                                                            )     **NO. 12-30218-TSH** |
| CAROLYN W. COLVIN,                           ) | |
| Acting Commissioner of Social Security     ) | |
| Administration,                                       ) | |
|                                                            ) | |
|             Defendant.                                 ) | |
| _____ ) | |

### MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (Docket No. 13) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING DECISION OF COMMISSIONER (Docket No. 18)
### February 27, 2014

HILLMAN, D.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying Yamari J. Mendrell's ("Plaintiff") application for Supplemental Security Income ("SSI"). Plaintiff filed a complaint seeking either a finding that Plaintiff is entitled to disability benefits or remanding Plaintiff's case for a further hearing (Docket No. 1).  Plaintiff then filed a motion asking for judgment on the pleadings (Docket No. 13), and the Commissioner filed a motion seeking an order affirming the decision of the Commissioner (Docket No. 18). For the reasons set forth below Plaintiff's motion is denied, and the Commissioner's motion is granted.

## Procedural History

Plaintiff filed an application for SSI on November 24, 2010 claiming she had been

disabled since May 10, 2010 (R. 192).[1]  Plaintiff claimed to be unable to work due to depression, bipolar disorder, and a lower back injury.  (R. 208).  Plaintiff's claim was denied on May 24, 2011 and upon reconsideration on August 5, 2011.  (R. 80-82, 86-88).  In June 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. 89).  A hearing was scheduled for February 23, 2012, but was postponed to allow Plaintiff time to obtain counsel. (R. 114-126, 13-23).  The hearing was held on August 3, 2012 before ALJ Leonard J. Cooperman.  (R. 24).  At this hearing Plaintiff was represented by counsel, and both Plaintiff and a vocational expert ("VE") testified.  (R. 24-44).  That same day the ALJ issued a decision finding Plaintiff was not disabled under the Social Security Act.  (R. 47-56).  The Appeals Council denied Plaintiff's request for review on October 17, 2012, making the ALJ's decision the final decision of the Commissioner.  (R. 1-6).

<u>Facts</u>

*Personal and Employment History*

Plaintiff was born on December 19, 1991, making her 18 years old on the date she applied for SSI and 20 years old on the date of her hearing before the ALJ.  (R. 27-28).  Her highest grade of school completed was tenth grade, and at the time of the hearing she was studying for her GED at the American Career Institute.  (R. 29, 31).  Plaintiff previously worked as a cashier at McDonald's.  (R. 38).

*Medical History*

Plaintiff was treated for depression and back pain at the Huntington Health Center from June 2010 through October 2010.  (R. 284-324).  On June 12, 2010, Plaintiff complained of increased depression with suicidal ideation and ideation of hurting others.  (R. 291).  She reported cutting herself on a daily basis and did not feel safe being alone.  (R. 291).  Plaintiff also

---

[1] A copy of the Administrative Record ("R.") has been provided to the Court under seal (Docket No. 12).

reported decreased appetite, fatigue, poor concentration, and insomnia.  (R. 291).  During

examination, Plaintiff was alert, but in tears and depressed with a flat affect.  (R. 291).  Plaintiff

was cooperative, but withdrawn and had poor eye contact.  (R. 291).  Plaintiff's activity was

decreased and her mood was depressed.  (R. 291).  Plaintiff was oriented with a normal degree of

awareness of her surroundings, good attention, and good insight.  (R. 291).  The attendant nurse

practitioner treated Plaintiff by continuing her medication, 10mg of Paroxetine daily, and

coordinating her inpatient hospitalization.  (R. 292). Plaintiff also completed a patient health

questionnaire on this date, stating that she had felt down, depressed, or hopeless, had trouble

falling or staying asleep, felt tired or had little energy, felt bad about herself, had trouble

concentrating, and had thoughts of being better off dead or harming herself nearly every day.  (R.

293).  Plaintiff reported that these problems made it very difficult for her to do work, take care of

things at home, or get along with other people.  (R. 293).

     In October 2010, Plaintiff was treated at the Baystate Brightwood Health Center for

depression, bipolar disorder, and low back pain.  (R. 357).  Plaintiff was prescribed 20 mg of

Paroxetine daily for her depression, which was described as stable, and Seroquel for her bipolar

disorder.  (R. 359-60).  Plaintiff was also referred to Valley Psychiatric Services.  (R. 359-60).

Plaintiff reported that she had lower back pain since May 2010 and could work up to three hours

maximum.  (R. 357).  Physicians diagnosed a likely musculoskeletal lumbar strain, prescribed

pain medication, and referred Plaintiff for physical therapy.  (R. 359).

     In November 2010, Plaintiff began counseling with Rebecca Jablonski, M.S.W., at

Valley Psychiatric Services.  (R. 914).  Plaintiff reported being very depressed, feeling hopeless

and unmotivated, and having thoughts of hurting herself.  (R. 908).  Ms. Jablonski noted that

Plaintiff had slurred speech, that her eye contact was "avoidant," and that she was nervous,

anxious, and restless.  (R. 910).  She also found that Plaintiff's emotional state-mood, emotional state-affect, thought process, thought content, intellectual functioning, orientation, memory, insight, and judgment were all within normal limits.  (R. 910).   Ms. Jablonski stated that Plaintiff had anxiety in a school setting, needed to learn coping skills for her depression, and could not deal with the effects of stress.  (R. 911).  She described Plaintiff as a cutter and said Plaintiff needed a lot of work with anger management.  (R. 912).  Ms. Jablonski assigned Plaintiff a Global Assessment Functioning Score ("GAF") of 45.  (R. 912).[2]

In December 2010, Plaintiff was seen by Jocelin Reatiraza, M.D., at Baystate Brightwood Health Center.  (R. 562).  Plaintiff requested a letter stating that she could not work, and Dr. Reatiraza noted that she "discussed with pt that she is able to work and if her depression warranted disability the paperwork would need to be filled out by a psychiatrist/mental health providers."  (R. 562).  Dr. Reatiraza increased Plaintiff's Seroquel dosage.  (R. 562).

Lumbar films and an EMG/NCS taken in March 2011 were normal.

In May 2011, Katrin Carlson, Psy.D., performed a consultative psychological exam.  (R. 376-81).  Dr. Carlson noted that Plaintiff was guarded and difficult to engage, and that Plaintiff's gait was normal and posture was relaxed until the end of the evaluation when Plaintiff began to rock back and forth when asked about childhood trauma.  (R. 376).  Dr. Carlson reported that Plaintiff was attentive and alert and oriented to person, place, and situation, and observed that Plaintiff's eye contact was fair to poor.  (R. 376-77).  Dr. Carlson found Plaintiff's intellectual functioning to be low-average to borderline, her judgment to be poor, her insight to be fair to

---

[2] The GAF Scale is used for reporting a clinician's judgment of the individual's overall level of functioning and concerns psychological, social and occupational functioning and, unless otherwise noted, refers to the level of functioning at the time of evaluation.  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-33 (4th ed., text revision 2000) (hereinafter DSM-IV).

GAF scores in the 41-50 range are indicative of "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)."  Id. at 34.

poor, her memory to be grossly intact, and her thought processes to be logical and goal directed. (R. 377).  Plaintiff had suicidal and aggressive thoughts and appeared somewhat paranoid or suspicious.  (R. 377).   Plaintiff reported having auditory and visual hallucinations, noting that the auditory hallucinations were of the command nature.  (R. 377).  Plaintiff told Dr. Carlson that she left her job at McDonald's due to an injury to her back.  (R. 377).

Dr. Carlson reported that Plaintiff presented as guarded and not easily engaged, and as a result would likely have difficulty managing situations involving the general public.  (R. 380). She further noted that Plaintiff's anger issues and reports of command hallucinations would be concerning were Plaintiff to work in a job requiring interactions with the public.  (R. 380).  Dr. Carlson reported that Plaintiff was experiencing significant neurovegetative symptoms that interfered with her functioning, in that she spent much of her day sleeping and was unable to concentrate.  (R. 380).  Dr. Carlson concluded that the prognosis for Plaintiff was guarded.  (R. 380).   Dr. Carlson diagnosed Plaintiff was post-traumatic stress disorder ("PTSD") and major depressive disorder with psychotic symptoms, and assigned Plaintiff a GAF score of 50.[3]  (R. 380).

In May 2011, J. Litchman, Ph.D., a state agency psychologist, reviewed Dr. Carlson's report and other available record evidence and completed a mental Residual Functional Capacity ("RFC") assessment.  (R. 406-08).  Dr. Litchman opined that Plaintiff would be able to understand and remember one and two step instructions, be able to sustain attention and concentration for two hour spans in an eight hour day for simple tasks, sustain persistence and pace for full time work, and would not work well with the public, but could handle brief social interactions with supervisors and peers in simple routines.  (R. 408).

---

[3] GAF scores in the 51-60 range indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV at 34.

In July 2011, Plaintiff underwent a transforaminal epidural steroid injection for right lower extremity pain along with low back pain. (R. 629). An August 2011 examination showed Plaintiff had normal range of motion, motor strength, sensation, reflexes, gait, and coordination. (R. 627). The examining clinician opined that Plaintiff had chronic pain syndrome perpetuated by social stressors. (R. 627).

In February 2012, Ms. Jablonski completed several reports for the period of March 2011 through December 2011, assigning Plaintiff a GAF score of 52 on each report. (R. 893-96). On a March 2012 report Ms. Jablonski assigned Plaintiff a GAF score of 62.[4] (R. 892).

Plaintiff was seen by a nurse practitioner at the Baystate Brightwood Health Center in March 2012. (R. 814). Plaintiff continued to take Seroquel and reported poor sleep and frequent nightmares. (R. 814).

### Hearing Testimony

Plaintiff testified that both physical and emotional problems affected her ability to work. (R. 35). Physically, Plaintiff said she had a cracked disc in her lower back. (R. 35). She testified that she had twice received injections for her back a year before the hearing, but that the injections did not help. (R. 36). Plaintiff also said she had gone to physical therapy. (R. 36). She further testified that she no longer sees a doctor for her back, does not take pain medication for her back, and does not use a crutch or cane to get around. (R. 35-37).

For her emotional impairments, Plaintiff testified that she was taking the medications Paroxetine and Seroquel and was also seeing a doctor and a counselor. (R. 32, 35). She testified that the medications cause dizziness, nausea, and diarrhea about once a week. (R. 32). Plaintiff testified that she would need a list to remember to go somewhere and get five items, that she has

---

[4] GAF scores in the 61-70 range indicate "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

panic attacks three times a day, lasting about twenty minutes each, and that she gets four or five good hours of sleep per night and naps during the day. (R. 40-41). Plaintiff also said she had feelings of guilt and worthlessness, suicidal thoughts and urges, and that she had attempted suicide twice three years before the hearing. (R. 41-42).

Regarding her daily life, Plaintiff testified that she spends most of her day sitting outside. (R. 37). She testified that she does not drive, but could if she had a car. (R. 29). Plaintiff said she does not have a social life. (R. 40). Plaintiff also testified that she was pursuing her GED by attended school at the American Career Institute, and that she was attending classes for six hours a day five days a week. (R. 31). Plaintiff could not answer the ALJ's question as to why she could not work if she was able to attend school five days a week, six hours a day. (R. 31-32).

Plaintiff testified that she had worked full-time as a cashier at McDonald's for seven months. (R. 33). Plaintiff explained that she slipped and fell at work, but that her worker's compensation claim was denied. (R. 33). Plaintiff testified that she had to lift 30 to 50 pounds as part of her job at McDonald's, but spent most of her time dealing with people and taking money. (R. 33). The ALJ asked if there was any reason Plaintiff couldn't go back to the McDonald's job, and Plaintiff said no. (R. 38-39).

A VE testified that Plaintiff's past work as a cashier at McDonald's is generally performed at the light exertional level and unskilled. (R. 39). The VE also said that Plaintiff performed the job at the medium exertional level. (R. 42). The VE testified that a person capable of unskilled, light or medium work could perform Plaintiff's past work. (R. 39-40, 42).

*The ALJ's Findings*

To be found eligible for SSI, an applicant must prove that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A).  When determining whether an applicant meets this standard, the Commissioner uses a "five-step sequential evaluation process."  20 C.F.R. § 404.1520 (a)(4).  This process requires the Commissioner to decide (1) whether the applicant is engaged is substantial gainful activity; if not (2) whether the applicant has a severe medical impairment; if so (3) whether the impairment meets or equals one of the listings in the Listing of Impairments, 20 C.F.R. § 404, subpart P, Appendix 1; if not (4) whether the applicant's RFC allows her to perform her past relevant work; and, if not (5) whether, considering the applicant's RFC, age, education, and work experience, the applicant could make an adjustment to other work.  *Id*.  Any jobs that an applicant could adjust to must exist in significant numbers in the national economy.  20 C.F.R. § 404.1560.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date.  (R. 52).  At step two, the ALJ found Plaintiff had the following severe impairments: back pain, post-traumatic stress disorder, anxiety, major depressive disorder, and bipolar disorder.  (R. 52).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (R. 54).  At step four, the ALJ found Plaintiff was able to perform past relevant work as a worker at McDonald's.  (R. 56).  The ALJ determined Plaintiff had the RFC to perform the full range of medium work as defined in 20 CFR 416.967(c) and 416.967(b), but the job would have to require her to remember and carry out no more than simple instructions.  (R. 55).  In light of the finding at step four, the ALJ concluded that Plaintiff had not been under a disability since November 24, 2010, the day her application was filed.  (R. 56).

In making this determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible.  (R. 53-54, 55).  The ALJ explained that Plaintiff's assertion of disability was inconsistent with her ability to engage in full-time work-like activities and inconsistent with her statement that she could perform her past relevant work full-time.  (R. 54).  The ALJ also noted that there was a dearth of evidence showing significant physical impairment.  (R. 54).  The ALJ affording significant weight to the views of all health care providers and reviewers who had opined on Plaintiff's vocational capacity to the extent that these opinions were consistent with the ALJ's findings and, more importantly, with Plaintiff's professed ability to perform substantial gainful activity.  (R. 54).

<u>Discussion</u>

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ's RFC assessment was flawed as it was inconsistent with the medical evidence, and because the ALJ failed to provide a legally sufficient explanation for his rejection of the treating sources opinions.

*Standard of Review*

This Court may affirm, modify or reverse the Commissioner's final decision, with or without remanding the case for rehearing.  42 U.S.C. § 405(g).  Review by this Court is limited to whether the Commissioner's findings are supported by substantial evidence and whether he applied the correct legal standards.  *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996); *see also Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).  Substantial evidence means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

When applying the substantial evidence standard, the Court must bear in mind that it is the

province of the Commissioner to determine issues of credibility, draw inferences from the record

evidence, and resolve conflicts about the evidence. *Irlanda Ortiz v. Sec'y of Health & Human

Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal of an ALJ's decision by this court is

warranted only if the ALJ made a legal error in deciding the claim, or if the record contains no

"evidence rationally adequate . . . to justify the conclusion" of the ALJ. *Roman-Roman v.

Comm'r of Social Security*, 114 F. App'x 410, 411 (1st Cir. 2004); *see also Manso-Pizzaro*, 76

F.3d at 16. If the Commissioner's decision is supported by substantial evidence, it must be

upheld even if the record could arguably support a different conclusion. *Evangelista v. Sec'y of

Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).

*Whether the ALJ's RFC Assessment was Flawed*

Plaintiff argues that the ALJ's RFC assessment was flawed because it was inconsistent

with the substantial medical evidence. An RFC is the most a person can do despite any

limitations caused by the individual's impairment(s). 20 C.F.R. § 416.945(a). When assessing

an RFC, the ALJ considers all of the relevant medical and other evidence, including descriptions

and observations of limitations provided by the claimant. *Id.* The burden is on the claimant to

demonstrate her RFC. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); 20 C.F.R. §

416.912(c).

"[T]he claimant has the burden of making some reasonable threshold showing that she

cannot return to her former employment because of her alleged disability." *Santiago v. Sec'y of

Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991). Plaintiff cites a number of medical

records documenting her symptoms and diagnoses, but merely proving the existence of

impairments does not establish that these impairments produce limitations which prevent her from performing past relevant work. *Sitar v. Schweiker*, 671 F.2d 19, 20-21 (1st Cir. 1982) ("Psychological disorders are not always disabling per se; in particular, severe anxiety or depression is not in itself sufficient to establish eligibility for benefits absent a proper showing of related functional loss.").

The ALJ acknowledged that Plaintiff has been diagnosed with major depressive disorder and bipolar disorder, had previously been assessed a GAF score of 50, and had been treated for back pain. The ALJ also noted that Plaintiff's most recent GAF score was a 62, that Plaintiff attended school for six hours a day five days a week, that Plaintiff stated that there was no reason she could not return to her former job, that Plaintiff did not use an assistive device to move about, and that Plaintiff did not take any medication or seek regular treatment for her physical impairment. Contrary to Plaintiff's argument, the ALJ's opinion does not show he ignored the evidence. Instead, the ALJ appropriately relied on Plaintiff's own statements regarding her ability to perform past work and her daily activities, in addition to her medical records, when assessing her RFC. *Santiago*, 944 F.2d at 5. (explaining that the ALJ is "entitled to rely on claimant's…own statements of her functional limitations.").

Plaintiff admitted that there is no reason she could not go back to work, and explained that she was able to attend class five days a week. Moreover, medical records show her most recent GAF score was a 62, which indicates only mild symptoms and "generally functioning pretty well." DSM-IV at 34. Though the record could arguably support an RFC with greater limitations, there is substantial evidence supporting the RFC assessed by the ALJ after he weighed the evidence. *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001) ("the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive….Hence, the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ."). As such, the ALJ did not err in assessing Plaintiff's RFC or concluding that Plaintiff's RFC permitted her to do past relevant work.

Plaintiff also, in passing, argues that the ALJ failed to consider the combined effect of Plaintiff's mental and physical impairments on her ability to perform basic work activities. Plaintiff fails to identify any additional limitations caused by a combination of Plaintiff's ailment which may have altered the RFC. *See Verdi v. Comm'r of Soc. Sec*., 2011 WL 1361559, *5 (D. Vt. 2011) (dismissing argument that ALJ failed to consider combined effect of impairments, in part because "[Plaintiff] fails to cite to any specific limitations on his ability to work that were allegedly caused by the combination of his surgeries or impairments which the ALJ did not address or addressed in an inappropriate manner in his decision.").  Moreover, ALJ's decision shows that he did consider Plaintiff's physical ailments, as he noted that she sought treatment for back pain in 2011, but did not currently use medication, have regular treatment, or use an assistive device to move about.  The ALJ also noted in his RFC assessment that he considered "all symptoms" when assessing Plaintiff's RFC, and found at step three that the Plaintiff did not have "an impairment or combination of impairments" that meets or equals the listed impairments. *See Tolentino v. Astrue*, 2010 WL 1633484, *13 (D. Mass. 2010) (finding such language "makes clear that [the ALJ] did consider [the plaintiff's] ailments in combination.").  The ALJ, therefore, did not commit a reversible error by failing to consider the combined effect of Plaintiff's mental and physical impairments.

*Whether the ALJ Failed to Provide a Legally Sufficient Explanation for Rejecting Treating Sources' Opinions*

Plaintiff also argues that the ALJ erred by failing to provide a legally sufficient explanation to support his rejection of the treating sources opinion. The ALJ explained that he afforded significant weight to the views of all health care providers and reviewers who opined on Plaintiff's vocational capacity to the extent those opinions were consistent with the ALJ's findings and, more importantly, with Plaintiff's professed ability to perform substantial gainful activity. Plaintiff does not point to, and this Court cannot find, any treating source medical opinions which were rejected or given less than significant weight under the ALJs' above evaluation, nor did the ALJ state that he rejected, or gave less weight, to any treating source opinion.[5] *Cf. McCollom v. Astrue*, 2012 WL 2244798, *3-5 (D. Mass. 2012) (finding the ALJ's decision did not give sufficient reasons for assigning less weight to the opinions of two treating sources). Moreover, the ALJ explained that he gave great weight to Plaintiff's admission that she possessed the capacity to perform her past work and ability to attend school five days a week, and only gave less weight to those opinions, if any, of health care providers and reviewers which conflicted with that evidence. While this explanation is not lengthy, it does sufficiently explain the weight afforded the record evidence. For both of these reasons, the ALJ did not err by failing to provide a sufficient explanation for rejecting treating sources' opinions.

---

[5] 20 C.F.R. § 416.902 defines "treating source" in the following way:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

## Conclusion

The ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's Motion for Order Reversing Decision of Commissioner is **denied**, and the Commissioner's Motion for Order Affirming Decision of Commissioner is **granted**.


SO ORDERED.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**